UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HILL,

                    Plaintiff,              **DECISION AND ORDER**
                                            **No.6:09-CV-6546-MAT**
          -vs-


DAVID F. NAPOLI, <u>et</u> <u>al.</u>,

                    Defendants.
_____

## I.    Introduction

        Michael Hill ("Plaintiff"), an inmate in the custody of the
New York State Department of Corrections and Community Supervision
("DOCCS"), brought this <u>pro</u> <u>se</u> action pursuant to 42 U.S.C. §§ 1983
and 1985 against Defendants for alleged violations of his First,
Eighth, and Fourteenth Amendment rights. <u>See</u> Complaint ("Compl.")
(Dkt #1). Currently before the Court are Plaintiff's Motions to
Compel Discovery (Dkt #51) and Motion for Summary Judgment
(Dkt # 26). Defendants have opposed both of Plaintiff's motions,
and have cross-moved for dismissal of the Complaint (## 47, 53)
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure
("Rule 12(b)(6)").

## II.  Preliminary Matters

###     A.    Treatment of Defendants' Cross-Motion

        Plaintiff's undated and unsigned Motion for Summary Judgment
(Dkt #26) was received by the Court on November 16, 2010. In it,

Plaintiff requested judgment in his favor "as the record itself illustrates Defendants acted with the sort of criminally reckless mental state necessary to be found liable for each cause of action alleged in the Complaint." Dkt #26, p. 1 of 69.

On December 4, 2012, the Court (Siragusa, D.J.) issued an order stating that Plaintiff's Motion for Summary Judgment would consist of the Statement of Facts attached to his Complaint (Dkt #1), the summary judgment motion (Dkt #26), and the materials docketed as the Supplement to Motion for Summary Judgment (Dkt #40). Judge Siragusa also ordered Defendants to file and serve a response to Plaintiff's summary judgment motion and his motion to supplement the Complaint, along with any cross-motion for summary judgment, on or before January 4, 2013. Defendants sought and obtained an extension of time until January 23, 2013, to file their responsive pleadings.

In their Memorandum (Dkt #47) filed January 23, 2013, in response to Plaintiff's summary judgment motion, Defendants state that they are "mov[ing] to dismiss [Plaintiff's] causes of action for failure to state a claim upon which relief can be granted as a matter of law and as for [sic] a response to plaintiff's motion for summary judgment." Dkt #47 at 1. The legal standards cited by Defendants pertain only to Rule 12(b)(6) and Rule 12(c). See id. at 2-3. Likewise, in their Notice of Motion (Dkt #47-3), Defendants state they are moving to dismiss "pursuant to Fed. R. Civ. P.

12(b)(6) and (c), as well as such other and further relief as this
Court may deem just and proper." Dkt #47-3 at 1. However,
Defendants go on to state, "ATTACHED HERETO IS AN IRBY NOTICE FOR
YOUR ATTENTION AND REVIEW", and they attach the form Irby[1] notice
utilized by the Attorney General's Office when moving for summary
judgment against a pro se litigant. See Dkt #47-3 at 2-3 (capitals
in orignal). Defendants also have submitted various documents and
records (e.g., copies of grievance determinations and the
transcript of the disciplinary hearing) that pertain to Plaintiff's
claims. Plaintiff did not file responsive pleadings to Defendants'
motion.

  After reviewing the parties' submissions, the Court determines
that it is proper to treat Defendants' motion to dismiss as a
cross-motion for summary judgment. Given that Defendants' attached
an Irby notice and various documents to their motions, the Court
presumes that Defendants intended to cross-move for summary
judgment. The Court finds that Plaintiff will not be prejudiced by
this for several reasons: First, Plaintiff was expressly given the
notice required under Second Circuit law by means of the Irby
notice attached to Defendants' papers. Second, in his moving
papers, Plaintiff clearly requested summary judgment based on the

---

[1]    Irby v. New York City Trans. Auth., 262 F.3d 412, 414
(2d Cir. 2001) (When a party moves for summary judgment against a
pro se litigant, either the movant or the district court must
provide the  pro se litigant with notice of the consequences of
failing to respond to the motion.).

existing record. Given Plaintiff's wealth of experiencing litigating § 1983 actions in this Court, there is no question that he should understand the import of an <u>Irby</u> notice.

**B.   Plaintiff's Attempt to Assert New Claims**

Plaintiff's experience litigating civil rights actions in federal court raises the issue of whether the Court should lessen the degree solicitude normally afforded to <u>pro se</u> litigants. The Second Circuit has noted that "[i]n some circumstances, such as when a particular <u>pro se</u> litigant is familiar with the procedural setting as a result of prior experience," <u>Tracy v. Freshwater</u>, 623 F.3d 90, 102 (2d Cir. 2010), it may be "appropriate to charge [him] with knowledge of . . . particular requirements," <u>Sledge v. Kooi</u>, 564 F.3d 105, 109 (2d Cir. 2009) (<u>per curiam</u>). The Court declines to impose a "general withdrawal of solicitude" here, but finds it appropriate to impose a limited withdrawal of solicitude in relation to the procedural requirements for asserting new causes of action. Specifically, Plaintiff has attempted to plead new causes of action in his motion for summary judgment. For instance, Plaintiff newly asserts that Corrections Officer Timothy Harvey ("C.O. Harvey") utilized excessive force against him. In the Complaint, however, Plaintiff did not assert an excessive force claim against C.O. Harvey, although he did include various allegations against him. The Court will not countenance Plaintiff's attempt to make an end-run around Judge Siragusa's December 4, 2012

Order (Dkt #43) denying his motion for leave to amend his Complaint. Therefore, the Court strikes all allegations in Plaintiff's summary judgment motion purporting to assert a cause of action not already pled in his Complaint.

### C. Plaintiff's Motion to Compel Discovery

In his motion dated March 4, 2013 (Dkt. #51), Plaintiff asserts that he is entitled to additional discovery in the form of records and information relating to pest extermination efforts at Southport for purposes of developing his conditions of confinement claim, set forth as the fifth cause of action in the Complaint. See Compl., ¶¶ 71-77. Defendants have opposed Plaintiff's motion as untimely. See Declaration of J. Richard Benitez, Esq. (Dkt #53).

Pursuant to the Court's Rule 16(b) scheduling order (Dkt #11), the deadline for discovery was December 31, 2010. By the time Plaintiff filed his motion to compel discovery on March 4, 2013, more than three years had passed since the expiration of that deadline. To allow further discovery at this late date requires a showing of "good cause" and leave of the Court. See FED. R. CIV. P. 16(b); see also, e.g., Carnrite v. Granada Hosp. Group, 175 F.R.D. 439, 446 (W.D.N.Y. 1997). Plaintiff did not seek leave of court for the instant motion, as required by Rule 16(b). With regard to the "good cause" requirement, Plaintiff must show "that scheduling deadlines cannot be met despite [his] diligence." Carnrite, 175 F.R.D. at 446 (citing 6A Wright, Miller and Kane, FEDERAL PRACTICE AND

PROCEDURE § 1522.1 at 231 (2nd ed. 1990)). Plaintiff has not attempted to excuse his late filing, and "good cause" for the more than three-year delay is patently missing from the record. Therefore, Plaintiff's motion to compel discovery is denied with prejudice.

## III. Factual Background

In accordance with the rules governing the review of motions to dismiss pursuant to Rule 12(b)(6), the Court accepts the factual allegations set forth in Plaintiff's complaint as true. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted). The following facts are taken from Plaintiff's Complaint (Dkt #1), which consists of a 30-page "Verified Complaint," a 13-page "Statement of Material Facts," and 96 pages of exhibits.

### A. Parties

At all times relevant to the instant action, Plaintiff was an inmate in the custody of DOCCS, incarcerated at Southport Correctional Facility ("Southport"). All Defendants in this action are or were employees of DOCCS: Corrections Officer Roger Held ("C.O. Held"), Corrections Officer John Rogers ("C.O. Rogers"), Corrections Sergeant Timothy Allison ("Sgt. Allison"), C.O. Harvey, Inmate Assistant Jacqueline Mackey ("Asst. Mackey"), Hearing Officer James Esgrow ("H.O. Esgrow"), Director of Special Housing Inmate Disciplinary Hearing Program Norman Bezio ("Dir. Bezio"),

Corrections Sergeant Randy Hurt ("Sgt. Hurt"), Inmate Grievance Supervisor William Abrunzo ("IGP Supr. Abrunzo"), Nurse Angie Gorg ("Nurse Gorg"), Nurse Administrator Cathy Felker ("Nurse Adminr. Felker") and Southport Superintendent David Napoli ("Supt. Napoli").

### B. Plaintiff's Allegations

#### 1. The Misbehavior Report and Deprivation of Plaintiff's Property

On April 5, 2009, Plaintiff was moved to C-Block 8-Company from C-Block 1-Company at Southport. Immediately following this transfer, he was confronted by C.O. Held, the supervisor of that housing unit. Plaintiff requested his Level 2 property from C.O. Held, who denied him access to his property until two days later on the basis that Plaintiff allegedly was a member of the "Blood" gang and because there was no porter available in the unit.[2]

On April 14, 2009, upon Plaintiff's return from a pre-trial teleconference for one of this other federal lawsuits, C.O. Held became belligerent, stating, "[Y]ou better not be suing anyone I know." Statement ("Stmt."), ¶ 15 (Dkt #1).

---

[2] Although Plaintiff does not make specific reference in his Complaint to his definition of "level," the Court has determined that Plaintiff is referring to his Progressive Inmate Movement System ("PIMS") level, a program employed at Southport by which Special Housing Unit ("SHU") inmates may achieve designated privileges based on improvements in, and maintenance of, acceptable behavior. E.g., Callender v. State, 956 N.Y.S.2d 792, 794 (N.Y. Ct. Cl. 2012).

On June 5, 2009, Plaintiff was transferred to Attica Correctional Facility on a writ of <u>habeas corpus ad testificandum</u> so that he could appear at a trial beginning on June 8, 2009. He was returned to the same unit at Southport on June 23, 2009, where C.O. Held again made threats toward him.

Shortly thereafter, a conflict on Plaintiff's housing unit arose when the inmate unit porter quit his job, and C.O. Held permitted an unpopular and problematic inmate to serve in that position. According to Plaintiff, C.O. Held's supervisors repeatedly instructed him not to permit this particular inmate out of his cell, and other inmates complained that this inmate had contaminated their food and performed inappropriate sexual acts on the unit. This new unit porter, who has not been identified here, refused to pick up certain inmates' food trays and then reported to the guards that those inmates refused to hand in their trays. The new porter was fired, and two inmates in C-Block 8-Company were moved to Level 1 housing unit under "false pretenses". Plaintiff does not identify who these inmates were, but the Court presumes, based on later statements in the Complaint, that Plaintiff was one of those adversely affected inmates.

According to Plaintiff, C.O. Held did not listen to the inmates' complaints about the unit porter, stated that "no Blood was going to run his company," and proceeded to write a false misbehavior report against Plaintiff alleging the following

disciplinary rule violations: Threats (102.10), Area Takeover (104.10), and Lead Others to Participate in Detrimental Action to Facility (104.12). Charge 104.10 eventually was stricken, however. Plaintiff also implicates Sgt. Allison in the writing of this report.

In addition to demoting Plaintiff to Level 1 status and placing him in full restraints (handcuffs, waist chain, and leg irons) during the move, Plaintiff was issued a deprivation order restricting his access to showers, exercise, cell clean-up, and haircuts. Furthermore, Sgt. Allison ordered the escorting guards to destroy Plaintiff's legal paperwork.

On July 13, 2009 at approximately 3:20 p.m., Plaintiff was escorted down B-Block 1-Company by C.O. Harvey and another guard in connection with the misbehavior report. C.O. Harvey returned ten minutes later with some of Plaintiff's Level 1 property, at which time he told Plaintiff, "I read your trial transcripts from that lawsuit and if you expose yourself on my unit I'm going to hurt you . . . and as for your property, you [sic] lucky you got what you [sic] getting now." Compl., ¶ 39; Stmt., ¶ 15.

To protest the false report, Plaintiff filed two grievances, forwarded complaints to Assistant Attorney General In Charge Debra A. Martin and the Commissioner of DOCCS, and spoke with Supt. Napoli during his rounds. On July 13 or 14, 2009, Supt. Napoli "treated Plaintiff as a nuisance . . . rolled his eyes and said

Plaintiff's problem was nothing and for him to stop writing grievance complaints." Stmt., ¶ 17. On August 3, 2009, Plaintiff again addressed Supt. Napoli about his grievances concerning the unlawful destruction of his personal and legal property. Supt. Napoli replied, "[M]y officers wouldn't do that, and if they did, just file a claim . . . I'm tired of investigating and dealing with complaints from you . . . you know where you went wrong Hill, you called me Dave, that's where you went wrong." Stmt., ¶ 18. Supt. Napoli thereafter allegedly instructed C.O. Harvey to deprive Plaintiff of his shower and feed-up.

### 2.   The Tier III Hearing

At Plaintiff's request, Asst. Mackey was selected as one of his Tier Assistants. According to Plaintiff, she refused to interview his witnesses and obtain certain documents for him, and also instructed Plaintiff to claim that another inmate made the threats and not to argue that the misbehavior report was false and retaliatory.

H.O. Esgrow, the Tier III Hearing Officer, then improperly obtained an extension to continue Plaintiff's hearing; did not allow Plaintiff to put relevant facts on the record which would have exonerated him, and improperly denied witness testimony on the basis that it was redundant. H.O. Esgrow conducted an off-the-record investigation by taking notes during the hearing, and, when confronted about it, refused to read into the record the contents

of his notes. Finally, H.O. Esgrow conferred with Supt. Napoli regarding the hearing, and they "deliberately prevented Plaintiff from proving his innocence by showing the ongoing pattern of abuse" by C.O. Held and Sgt. Allison in issuing false misbehavior reports and threatening inmates. Stmt., ¶ 29.

At the conclusion of the hearing on August 17, 2009, H.O. Esgrow found Plaintiff guilty of Demonstration (104.12) and Threats (102.10), and imposed a penalty of six months in SHU starting January 27, 2010. There was a lesser penalty imposed for three months, but the Court cannot discern it because H.O. Esgrow's handwriting is illegible. On September 17, 2009, Dir. Bezio affirmed H.O. Esgrow's determination, and on September 30, 2009, he denied reconsideration. According to Plaintiff, Dir. Bezio refused to correct numerous procedural errors.

### 3.    Unclean Cell Conditions

Plaintiff was forced to move into an unsanitary cell that had ants crawling on it, a dirty floor, and a toilet that "reeked of stale urine." Compl., ¶ 74. He was unable to clean the cell, and he complained of being sick every day. However, the nurses only claimed to have received one sick call slip from him. Id., Ex. F.

### 4.    Interference With Grievance Procedure

IGP Supr. Abrunzo deliberately prevented Plaintiff's grievances and appeals from being processed so as to interfere with

Plaintiff's efforts to exhaust his remedies against DOCCS employees.

### 5. Denial of Adequate Medical Treatment

Nurse Gorg deliberately refused to properly assess his skin condition so that a doctor or physician's assistant could be notified and be able to assess him. Further, Nurse Gorg denied Plaintiff sick call by refusing to examine his skin rash and provide him with adequate medical treatment. When he complained, she threatened to write a false misbehavior report against him.

After Plaintiff filed a grievance against Nurse Gorg, she "immediately attacked" him by attempting to give him a tuberculosis ("TB") vaccination. Nurse Gorg did not have him quarantined as a result of his refusal to be vaccinated, and instead placed him in the same housing unit as other inmates. She instructed the guards to deny him all privileges and liberties until he allowed her to administer the TB shot.

Nurse Adminr. Felker deliberately caused Plaintiff to go untreated for his skin rash (which he claimed was eczema) and caused other skin treatments to be delayed. Nurse Adminr. Felker refused to access Plaintiff's medical records and did not examine Plaintiff herself before agreeing with the facility nurses that he did not have eczema. Nurse Adminr. Felker allowed Nurse Gorg to retaliate against Plaintiff by causing him to be denied visits, recreation, a job as a unit porter, and other activities.

-12-

## IV.   Relevant Legal Standards

### A.   42 U.S.C. § 1983

To prevail in a Section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; see also, e.g., West v. Atkins, 487 U.S. 42, 48 (1988); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Section 1983 itself, however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240 (1994). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).

### B.   Rule 12(b)(6) Motions to Dismiss

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court clarified the standard to be applied to a 12(b)(6) motion, noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Twombly, 550 U.S. at 555. Although for the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true, it "[is] not bound to

-13-

accept as true a legal conclusion couched as a factual allegation." Id.

When presented with a Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of and relied on when bringing suit, or matters of which judicial notice may be taken. E.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted). A court considering a motion to dismiss a pro se complaint "must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). However, a pro se party opposing a motion to dismiss still must come forward with factual allegations that are enough to raise a right to relief "above the speculative level." Twombly, 550 U.S. at 555. Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id.

### C.   Rule 56(c) Motions for Summary Judgment

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citing Anderson, 477 U.S. at 255). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted).

To survive a Rule 56(c) motion, the nonmovant must come forward with "'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (quoting FED. R. CIV. P. 56(e) (italics in original)). Summary judgment is not defeated by "[c]onclusory allegations, conjecture, and speculation[,]" Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998), or the "mere existence of a scintilla of evidence[,]" Anderson, 477 U.S. at 252, supporting the non-movant's case.

**V.   Discussion of Plaintiff's Claims**

**A.   Retaliation**

Plaintiff first alleges that one of his previous federal lawsuits, Hill v. Washburn, et al., No. 6:08-CV-6285 (W.D.N.Y.), is the motivating factor behind for Defendants' adverse acts against him, including C.O. Held's false misbehavior report; unauthorized cell searches; and the destruction of his property. Compl., ¶¶ 33-42.

In order to state a valid retaliation claim, Plaintiff must allege that his actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). "A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.'" Anderson v. Lapolt, No. 07-CV-1184, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting Friedl v. City of N.Y., 210 F.3d 79, 85-86 (2d Cir. 2000)). The Second Circuit has cautioned that, "because prisoner retaliation claims are easily fabricated," courts must be "careful to require non-conclusory allegations." Bennett, 343 F.3d at 137 (quotation omitted).

The filing of a § 1983 lawsuit is considered a constitutionally protected activity. Bounds v. Smith, 430 U.S. 817,

821-32 (1977). The issuance of a false misbehavior report and the destruction of an inmate's personal property can constitute "adverse actions" for retaliation purposes. See Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004) (misbehavior report); Smith v. City of N.Y., No. 03 Civ. 7576(NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (destruction of property). However, Plaintiff has failed to allege a sufficient "causal connection between the protected speech and the adverse action[,]" Gill, 389 F.3d at 380 (citation omitted). Plaintiff's 2008 lawsuit did not involve any of the defendants named in this action. Moreover, the events alleged in that lawsuit predated C.O. Held's conduct by two years and involved conduct (the alleged mishandling of Plaintiff's mail) wholly unrelated to the conduct complained of here. Accordingly, Plaintiff has failed to make sufficient allegations regarding the "nexus" element of a retaliation claim. See, e.g., Burkybile v. Board of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 314 (2d Cir. 2005) (in employment discrimination case, plaintiff failed to establish "causal nexus" because more than a year passed between the protected activity and the adverse employment action).

Defendant's motion to dismiss this cause of action for failure to state a retaliation claim is granted. Plaintiff's motion for summary judgment with regard to this claim necessarily is denied.

B.    **Violations of Due Process**

1.    **Destruction of Property**

Plaintiff asserts that his personal property and legal papers were deliberately destroyed when he was transferred to PIMS Level 1. With regard to the personal property and legal papers, even the intentional destruction of an inmate's belongings by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 536 (1984). because New York state law provides him with an adequate post-deprivation remedy under Section 9 of the New York Court of Claims Act, Plaintiff has not stated an actionable due process claim. Reyes v. Koehler, 815 F. Supp. 109, 114 (S.D.N.Y. 1993) (collecting cases); see also Richardson v. Coughlin, 101 F. Supp.2d 127, 133 (W.D.N.Y. 2000).

Although Plaintiff asserts that his due process rights were violated in regards to the alleged destruction of his legal papers, this claim more properly is analyzed under the First Amendment. "The active interference of prison officials in the preparation or filing of legal documents may constitute denial of access" to the courts. Toliver v. City of N.Y., No. 10 Civ. 5806(SHS)(JCF), 2013 WL 6476791, at * (S.D.N.Y. Dec. 10, 2013) (citing Lewis v. Casey, 518 U.S. 343, 350 (1996)). However, Plaintiff merely states that C.O. Harvey read his trial transcripts and destroyed a "large portion" of his legal papers. Compl., ¶ 29. He does not allege that

-18-

his ability to pursue some criminal or civil case was hindered by C.O. Harvey's alleged actions. Therefore, Plaintiff cannot state a First Amendment denial of access claim. See Lewis, 518 U.S. at 349 (noting the requirement of an "actual injury" for a right-of-access claim); Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (actual injury occurs only when the loss of the inmate's pleadings prejudiced his ability to pursue a legal claim; mere delay is not enough) (citations omitted).

Defendant's motion to dismiss this cause of action for failure to state a claim in regards to the destruction of his property and legal papers is granted. Plaintiff's motion for summary judgment with regard to this claim necessarily is denied.

### 2.   Mechanical Restraints

Plaintiff alleges that Defendants violated his due process rights by placing him in mechanical restraints during his transfer to Level 1. See Compl., ¶¶ 48-49. To state a cognizable due process claim, he must allege that (1) he possessed a liberty interest, and (2) Defendants deprived him of that interest without sufficient process. Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). Even assuming that an inmate has a liberty interest in being free from bodily restraints while incarcerated, cf. Callender, 956 N.Y.S.2d at 794 (varying gradations of deprivation to which inmate was subjected based on Southport's classification system regarding such matters as restraints, possessions, and number of showers, were not

-19-

"significant" for due process purposes), Plaintiff does not allege facts to support the claim that he was restrained without due process by being placed him in full restraints following the issuance of the July 13, 2009 misbehavior report.

The exhibits attached to his Complaint indicate that a restraint order was entered on July 13, 2009, when Plaintiff was issued a misbehavior report for attempting to "usurp the authority of the facility". The restraint order was reviewed and renewed every six days until August 9, 2009. Plaintiff also had the ability to file a grievance, write to the Deputy Superintendent of Security, and file a proceeding pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 in connection with the restraint order. In light of review he received and the legal avenues available to him, Plaintiff was afforded sufficient process. Black v. Goord, 03-CV-6155, 2007 WL 3076998, at *5 (W.D.N.Y. Oct. 19, 2007). Because the documents incorporated into Plaintiff's Complaint contradict his allegations, the Court need not accept them as true. E.g., Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (citing Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981)).

Defendants's motion to dismiss Plaintiff's due process claim regarding the mechanical restraint order is granted, and Plaintiff's motion for summary judgment on this claim is denied.

### 3. Deprivation Order

Plaintiff asserts that he was deprived of a liberty interest with regard to the deprivation order commencing July 13, 2009, restricting his access to haircuts, cell clean-up, shower, and recreation. Based on the documents attached to Plaintiff's Complaint, the deprivation orders were limited in time. For instance, cell clean-up privileges were restored on July 19, 2009; and shower privileges were restored on July 31, 2009. Courts in this Circuit have held that the types of deprivations complained of here do not constitute protected liberty interests. See, e.g., Pettus v. Geaver, No. 04-CV-228, 2007 WL 295313, at *2 (N.D.N.Y. Jan. 10, 2007) ("[A]lthough [plaintiff] contends that he was deprived of shower[s], recreation, toothbrush and toothpaste for 21 days, he has failed to demonstrate that given the limited period of deprivation, these conditions gave rise to a protected liberty interest.") (citations and internal quotations omitted; alteration in original).

Defendants' motion to dismiss Plaintiff's due process claim based on the deprivation is granted, and Plaintiff's motion for summary judgment on that claim is denied.

### C. Constitutional Violations at Tier III Hearing

In the third cause of action, Plaintiff alleges that he was denied due process in various ways at the Tier III Hearing relating

to the July 13, 2009 misbehavior report issued by C.O. Held. Compl., ¶¶ 54-60.

### 1.   **False Misbehavior Report**

The filing of baseless or false charges against an inmate does not, in and of itself, give rise to a constitutional violation. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (An inmate "has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest."). Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, the inmate must be able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. See Freeman, 808 F.2d at 951-53 (reasoning that the filing of false charges is not a constitutional violation, as long as the prisoner is granted a hearing and given an opportunity to rebut the charges); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988) (reversing grant of summary judgment where prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse).

Here, Plaintiff has alleged both that the misbehavior report was retaliatory and that he was denied due process at the Tier III hearing. However, as discussed above, the Court has found that

Plaintiff fails to state a claim of retaliation. The Court thus will assess whether Plaintiff alleges a viable due process claim arising out of the Tier III hearing.

### 2.   Due Process at Tier III Hearing

Plaintiff asserts that (1) H.O. Esgrow failed to return to the disciplinary hearing following an adjournment and filed an extension under false pretenses; (2) H.O. Esgrow failed to call employee witnesses at Plaintiff's hearing; (3) H.O. Esgrow did not permit testimony from an inmate witness; (5) H.O. Esgrow interfered with Asst. Mackey so as to prevent Plaintiff from presenting a defense; (6) Asst. Mackey refused to provide certain materials relevant to Plaintiff's defense; and (7) Asst. Mackey advised Plaintiff to "inform on another inmate". See Compl., ¶¶ 55-61.

Due process under the Fourteenth Amendment requires that an inmate charged with a disciplinary violation be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the hearing officer as to the evidence relied on for his decision, and the reasons for the disciplinary action taken. Freeman, 808 F.2d at 953 (citing Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974)).

### a.   Adjournments

Plaintiff asserts that H.O. Esgrow did not comply with New York regulations when he requested adjournments for the Tier III hearing. The Second Circuit has made clear that the seven-day period established by New York State regulations is not controlling for purposes of an inmate's due process claim. Russell v. Coughlin, 910 F.2d 75, 78 n. 1 (2d Cir. 1990). Plaintiff's claim is not cognizable in a § 1983 action. Hyman v. Holder, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y.  Mar. 15, 2001) (citing, inter alia, Doe v. Connecticut Dept. of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990)); see also Loving v. Selsky, 2009 WL 87452, at *4 (W.D.N.Y. Jan. 12, 2009).

### b.   Failure to Call Witnesses

According to Plaintiff, H.O. Esgrow improperly failed to call employee witnesses at Plaintiff's hearing and did not permit testimony inmate Deatrick Marshall to testify. The Second Circuit has stated that "'a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity.'" Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992) (quoting Kingsley v. Bureau of Prisons,937 F.2d 26, 30 (2d Cir. 1991) (citing  Ponte v. Real, 471 U.S. 491, 496 (1985) (quotation omitted)).

The transcript of the Tier hearing, produced by Defendants in response to Plaintiff's summary judgment motion, refutes his claim. Plaintiff admitted that two of the employee witnesses, Sgt. Butler

and Sgt. Shope, were not on the gallery at the time of the incident; another employee, named Sandroni, was not even working that day. Three of Plaintiff's inmate witnesses (Williams, Perkins, Holyfield) testified favorably for his defense. Plaintiff admitted that the uncalled witness, Deatrick Marshall, would not have provided any testimony different from that already provided by Williams, Perkins, and Holyfield, and H.O. Esgrow determined that Marshall's testimony would be cumulative. With regard to each of the uncalled witnesses, H.O. Esgrow properly provided legitimate reasons, in writing and at the time of the hearing, for his decision not to have them appear. H.O. Esgrow thus fully complied with federal constitutional requirements in regard to Plaintiff's right to call witnesses. Cf. Ponte, 471 U.S. at 495-500 (prison officials not required to justify exclusion of witnesses at the time of disciplinary hearing, but may give reasons at later court challenge).

### c. Inmate Legal Assistance

Under the due process clause of Fourteenth Amendment, a corrections officer assigned to assist a prisoner who, by reason of his confinement in a segregated housing unit, is impeded in preparing his defense, has obligation to perform the investigatory tasks which inmate, were he able, could perform for himself. Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988). However, an inmate's right to assistance, which derives from the Due Process clause, is

significantly less than the right to counsel guaranteed by the
Sixth Amendment to criminal defendants. <u>Silva v. Casey</u>, 992 F.2d
20, 22 (2d Cir. 1993) (<u>per</u> <u>curiam</u>).

Again, the documents submitted by both Plaintiff and
Defendants' refute Plaintiff's complaints about Asst. Mackey, who
verified in writing to H.O. Esgrow that she interviewed all of
Plaintiff's requested witnesses, and that they all agreed to
testify that Plaintiff never made any threats about the food trays
or porters. With regard to his claim that she failed to provide him
the log book entries for several months prior to the incident, for
purposes of showing that C.O. Held had a history of issuing similar
false misbehavior reports, this information was not relevant to the
issues to be determined at the hearing, i.e., whether or not
Plaintiff made threats. <u>See</u> <u>Johnson v. Scully</u>, 194 A.D.2d 605, 606
(2d Dep't 1993) (rejecting claim that employee assistant deprived
inmate of due process in failing to provide documents where inmate
was charged with possessing contraband and interfering with the
search of his cell, and requested information would have, according
to the petitioner, helped determine whether the correction Officer
who searched his cell did so in retaliation for prior events"; the
motivation for the search had no bearing on the issues at the
hearing, i.e., whether the inmate possessed the contraband and
interfered with the search) (citing 7 N.Y.C.R.R. 254.6(c); <u>Matter</u>
<u>of Irby v. Kelly</u>, 161 A.D.2d 860, 556 N.Y.S.2d 409). Thus,

-26-

Plaintiff "was not prejudiced by the alleged omissions of his assistant or deprived of due process[.]" Id. (collecting cases)).

### d. Tier Hearing In Compliance With Due Process Requirements

If, as the Court has found, the Wolff due process requirements have been met, the disciplinary finding will be upheld if there is "*some* evidence" to support it. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453-55 (1985) (emphasis added)). The Hill standard is not demanding, and it is satisfied if "there is *any* evidence in the record that supports" the decision. Id. (emphasis in original). The Constitution "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." 472 U.S. at 455.

Plaintiff has attached H.O. Esgrow's written findings to his Complaint, which indicate that H.O. Esgrow relied on the misbehavior report, which contained the allegation that Plaintiff yelled, "[T]hat fucker in 20 cell ain't coming out, I'll make sure no one returns their trays if he's out. You people don't pick who the porter is, we will tell you who'll come out," in addition to the eyewitness testimony of C.O. Held. Compl., Exs. K & P. "New York State courts have found that a misbehavior report, together with the eyewitness testimony of its author, meets the state law standard of 'substantial evidence' to support a

-27-

determination of guilt in the prison disciplinary context." <u>Faulk v. Fisher</u>, No. 09-CV-6377(MAT), 2012 WL 2953229, at *6 (W.D.N.Y. July 19, 2012) (citations omitted). District courts in this Circuit have found that proof sufficient to satisfy the "substantial evidence" standard imposed by New York State law necessarily satisfies <u>Hill</u>'s less demanding "some evidence" test. <u>Id.</u> (collecting cases). Thus, Plaintiff's due process claim fails as a matter of law. <u>Id.</u>

### e.   Errors on Administrative Appeal

Plaintiff alleges that Dir. Bezio erroneously refused to expunge or reverse H.O. Esgrow's adverse disciplinary finding. Since, as discussed above, Plaintiff has failed to show that his rights were violated during the disciplinary proceeding conducted by H.O. Esgrow, there is no legal basis for his claim against Dir. Bezio. <u>Clyde v. Schoellkopf</u>, 714 F. Supp.2d 432, 439 (W.D.N.Y. 2010) (citing, <u>inter alia</u>, <u>Black v. Selsky</u>, 15 F. Supp.2d 311, 318 (W.D.N.Y. 1998)).

### D.   Conspiracy

The fourth cause of action in the Complaint alleges that Defendants, acting together, "condoned, encouraged, directed and assisted the actions of the others in a deliberate effort to single out Plaintiff for harsh, arbitrary, and discriminatory treatment" because of Plaintiff's status as a Hebrew Israelite. Compl., ¶¶ 63-

64. The alleged conspiracy claims are brought pursuant to 42 U.S.C. §§ 1983 and 1985.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culberson, 200 F.3d 65, 72 (2d Cir. 1999). "[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

Plaintiff does not allege sufficient facts to establish any element of a § 1983 conspiracy claim. Rather, he merely recites each Defendant's allegedly improper actions and omissions which, taken individually or together, fail to state a constitutional violation, as discussed elsewhere in this Decision and Order. See Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); other citation omitted); Romer v Morgenthau, 119 F. Supp.2d 346, 363-64 (S.D.N.Y. 2000) (similar) (citations omitted). Further, Plaintiff's allegation that the Defendants acted in concert and at the behest of Supt. Napoli is entirely conclusory and cannot survive Defendants' motion to dismiss. See Boddie, 105 F.3d at 862 (where

inmate's claim that the officers conspired to retaliate against him was "'unsupported, speculative, and conclusory'", it could be dismissed on the pleadings) (quotation and citations omitted).

To sustain a cause of action for conspiracy under § 1985(3), a plaintiff must allege and demonstrate that the defendants acted with racial or other class-based animus in conspiring to deprive him of equal protection of the laws or equal privileges and immunities secured by law. E.g., Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) (citing 42 U.S.C. § 1985(3)); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Although a plaintiff need not offer proof of an explicit agreement, e.g., United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988), he nevertheless must make more than "conclusory, vague, or general allegations of conspiracy." Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam).

Here, Plaintiff's allegations of a conspiracy based on § 1985(3) are no less vague and conclusory as those offered in support of his § 1983 claim, and they fail to state claim upon which relief may be granted. Defendants' motion to dismiss the conspiracy claims is granted, and Plaintiff's motion for summary judgment is denied.

### E.   Conditions of Confinement

Plaintiff contends he was placed in a cell that was dirty, infested with ants, and smelled of urine, and that these conditions

violated his Eighth Amendment rights. Compl., ¶¶ 70-77. He asserts he suffered from "sickness stomach pain diarrhea vomiting for days. . . ." Id., ¶ 75. He also asserts that he was deprived of meals for 72 hours, although he does not specify when this allegedly occurred.

### 1.   Cell Conditions

An Eighth Amendment claim based on the physical condition of a correctional facility requires both a showing that the plaintiff lacked "the minimal civilized measure of life's necessities" while confined, and that the person responsible for this deprivation acted with knowledge and deliberate indifference to a substantial risk to his health or safety. Wilson v. Seiter, 501 U.S. 294, 298, 299 (1991); see also Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). Plaintiff has not alleged that Defendants deprived him of any of his basic human needs or exposed him to conditions that unreasonably posed a substantial risk of harm to his future health. General allegations of uncleanliness, such as Plaintiff's here, are insufficient to state an Eighth Amendment claim. Williams v. Carbello, 666 F. Supp.2d 373, 379 (S.D.N.Y. 2009).

Although the Second Circuit has found that "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted[,]" LaReau v. MacDoughall, 473 F.2d 974, 978 (2d Cir. 1972), Plaintiff merely has alleged that the cell in which he was housed for a period of time

"smelled of urine." Contrast with LaReau, 473 F.3d at 978 (inmate spent five days in a cell that contained only a grate-covered hole in floor that could only be flushed from outside was deprived of Eighth Amendment rights).   With regard to the ants allegedly "crawling around the floor", Plaintiff has not alleged that he was objectively exposed to a grave risk of harm, or that any particular defendant acted with a sufficiently culpable state of mind. "A Section 1983 claim will not lie for prison conditions that are merely unpleasant." Ortiz v. Department of Corr., 08 Civ. 2195, 2011 WL 2638137, at *6 (S.D.N.Y. Apr. 29, 2011), report & recommendation adopted, 2011 WL 2638140 (S.D.N.Y. July 5, 2011).

With regard to his claim that the cell conditions caused him to be ill and that Defendants allowed his condition to remain untreated, his allegations are contradicted by his annexed exhibits, and the Court declines to accept them as true. In particular, Plaintiff references a Captain's Office Memorandum from C. Yehl to Plaintiff dated July 31, 2009, noting that "according to the Facility Medical Department, [Plaintiff] [has] been seen by a nurse for sick call several times since the complaint was submitted." Ex. F (Dkt #1). See Rapoport v. Asia Electronics Holding Co., 88 F. Supp.2d 179, 184 (S.D.N.Y. 2000) (holding that where documents relied on in drafting the complaint contradict the complaint, "the documents control and this Court need not accept as true the allegations of the amended complaint").

### 2.   Deprivation of Meals

Plaintiff also alleges, without further specificity, that prison guards were "deliberately not feeding him any food for 72 hours." Compl., ¶ 77. Plaintiff does not mention the alleged deprivation of food elsewhere in his Complaint, including his statement of material facts.

"While no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (internal and other citations omitted). The Complaint does not state how many meals Plaintiff allegedly was denied, by whom, or for what reason–it only posits that the unnamed guards did so upon the orders of Supt. Napoli. Compl., ¶ 77. These conclusory allegations fail to state a plausible claim against Supt. Napoli or the unidentified guards under Section 1983. See Dorsey v. Fisher, No. 9:09–CV–1011 (GLS)(DEP), 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) ("Dorsey alleges that defendant Racette is the 'son of Past Clinton Warden' and like his father, lets officers beat and kill inmates and then covers it up. These conclusory allegations fail to state a plausible claim against Racette pursuant to Section 1983.") (internal citation to record omitted).

-33-

F.    **Improper Handling of Grievances**

Plaintiff advances a claim that IGP Supr. Abrunzo conducted inadequate investigations into his complaints and interfered with his grievances. Compl., ¶¶ 78-82. "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." Avent v. Doe, No. 05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008) (citing Torres v. Mazzuca, 246 F. Supp.2d 334, 342 (S.D.N.Y. 2003) (collecting cases)). Thus, even if IGP Supr. Abrunzo's investigation of Plaintiff's grievances was in some way inadequate or deficient, that would not give rise to a constitutional claim. e.g., Green v. Herbert, 677 F. Supp.2d 633, 639 (W.D.N.Y. 2010) (inmate's allegation that officer who was assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate 'has no constitutional right to have his grievances processed or investigated in any particular manner'") (quoting Shell v. Brzezniak, 365 F. Supp.2d 362, 379 (W.D.N.Y. 2005)).

In any event, Plaintiff's exhibits contradict his assertion that IGP Supr. Abrunzo did not process Grievance No. SPT-47701-09. Rather, his submissions indicate that the grievance was processed and dismissed (Compl., Ex. V). Thus, the Court need not accept his assertions that IGP Supr. Abrunzo failed to process his grievances. See Rapoport, 88 F. Supp.2d at 184.

### G.   Deliberate Indifference to Medical Needs

Plaintiff's seventh and final cause of action contains the following allegations regarding his medical care at Southport: (1) Nurse Gorg failed to adequately assess his medical condition and failed to provide adequate medical care for his skin rash, resulting in pain and mental anguish from open sores and skin lesions; (2) Nurse Gorg harassed Plaintiff by attempting to administer a TB vaccination; (3) Nurse Gorg threatened to write a false misbehavior report against Plaintiff; (4) Nurse Gorg failed to notify Plaintiff of the consequences of refusing a TB vaccination; (5) Nurse Adminr. Felker condoned Nurse Gorg's conduct; (6) Nurse Adminr. Felker instructed the Plaintiff not be placed in quarantine after Plaintiff refused the TB shot; (7) when Nurse Adminr. Felker began working at Southport, the nurses were instructed to stop providing treatment for inmates' skin rashes; (8) Nurse Adminr. Felker denied Plainitff medication, treatment, and examination by  a physician; and (9) N.A. Felker denied Plaintiff medical treatment due to state budget cuts. Compl., ¶¶ 83-98.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "This standard incorporates both objective

and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." <u>Smith v. Carpenter</u>, 316 F.3d 178, 184 (2d Cir. 2003) (citations omitted).

To satisfy the objective element, a prisoner must show a serious illness or injury resulting in the infliction of unnecessary pain and suffering. <u>Smith</u>, 316 F.3d at 184 (citing <u>Estelle</u>, 429 U.S. at 105). With regard to the subjective element, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" <u>Chance</u>, 143 F.3d at 702 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)), a state of mind "equivalent to the familiar standard of 'recklessness' as used in criminal law." <u>Phelps</u>, 308 F.3d at 186 (citation omitted). The Supreme Court has cautioned that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." <u>Smith</u>, 316 F.3d at 184 (citing <u>Estelle</u>, 429 U.S. at 105-06; other citation omitted).

Plaintiff's complaint fails to set forth sufficient facts to plead a plausible claim of deliberate indifference to serious medical needs. As an initial matter, Plaintiff has not established

that he actually suffered from eczema; the documents submitted by Defendants indicate that DOCCS' medical staff determined that a diagnosis of eczema was not warranted. Even assuming that Plaintiff did have eczema, it was not sufficiently serious that a failure to treat it could be expected to lead to substantial and unnecessary suffering, injury, or death. See Sledge v. Kooi, 564 F.3d 105 (2d Cir. 2009) (alleged eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need" on which to premise an Eighth Amendment claim of deliberate medical indifference); Samuels v. Jackson, No. 97 Civ. 2420, 1999 WL 92617, at * 1–3 (S.D.N.Y. Feb. 22, 1999) (prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment); Tsakonas v. Cicchi, 308 F. App'x. 628, 632 (3d Cir. 2009) (unpublished opn.) (affirming the dismissal of an Eighth Amendment claim premised upon a denial of treatment for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" on the basis that the prisoner had failed to allege a serious medical condition).

Folded into Plaintiff's deliberate indifference claim is a claim that the circumstances surrounding the TB vaccination caused him to suffer unconstitutional conditions of confinement. Plaintiff asserts that he was "left . . . in the same housing unit in a

position to contaminate others" after refusing the TB vaccine. However, this allegation is belied by his own submissions, which indicate that he was placed on "TB Hold" based on his denial of the TB vaccination. Compl., Exs. T & V. In any event, the conditions of confinement imposed by DOCCS' TB hold policy "do not result in a serious deprivation of basic human needs, and therefore TB hold meets Eighth Amendment standards." Giles v. Coughlin, No. 95 Civ. 3033, 1997 WL 433437, at *9 (S.D.N.Y.  Aug. 1, 1997) (citations omitted).

Moreover, Plaintiff's allegation that he was "not instruct[ed] to be placed in quarantine," Compl., ¶ 90, is not only implausible, it is too vague and conclusory to state a claim for relief under any Constitutional provision. Assuming Plaintiff actually seeks to challenge his confinement in keeplock pursuant to TB hold, he does not allege any facts other than the loss of movement afforded him while in general population and loss of privileges. See Compl., ¶ 88. Because Plaintiff does not allege any condition to which he was subjected that resulted in the deprivation of a basic human need, he cannot maintain a conditions of confinement claim on these facts. See Delisser v. Goord, No. 02CV0073, 2003 WL 133271, at *6 (N.D.N.Y. Jan. 15, 2003) (rejecting inmate's claim being placed in medical keeplock for his refusal to take the TB test and TB medication was cruel and unusual punishment).

Plaintiff's complaint concerning Nurse Gorg's advice to purchase his own cosmetic supplies from commissary for his alleged eczema, <u>see</u> Compl., Ex. T, amounts to nothing more than a disagreement over treatment, which does not present a cognizable medical indifference claim. <u>See</u> <u>Chance</u>, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

Finally, with respect to Plaintiff's claim that Nurse Adminr. Felker created a policy of denying inmates treatment for skin rashes with the exception of over-the-counter creams, <u>see</u> Compl., ¶ 93, his attached exhibits again contradict the assertions in the complaint. <u>See</u> Compl., Ex. T (Sick Call Response dated 12/9/08, stating, "You need to buy your own cosmetic supplies at commissary. You must have eczema, xerosis, or ichthyosis in order to receive medical [sic] ordered emollients."). As noted earlier, such allegations cannot survive a motion to dismiss where they are contradicted by Plaintiffs' own exhibits. <u>Rapoport</u>, 88 F. Supp.2d at 182 (citing, <u>inter alia</u>, <u>Feick v. Fleener</u>, 653 F.2d 69, 75 (2d Cir. 1981) (citations omitted).

## VI.  Conclusion

For the reasons discussed above, Plaintiff's Motion to Compel Discovery (Dkt # 51) is denied with prejudice;  Plaintiff's Motion for Summary Judgment (Dkt #26) is denied with prejudice; Defendants' Motion to Dismiss/Cross-Motion for Summary Judgment

(Dkt #47), is granted. The Complaint is dismissed in its entirety with prejudice.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962). Further requests to proceed on appeal <u>in forma pauperis</u> should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     March 31, 2014
           Rochester, New York